UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| RCM HILL, LLC, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 6:26-cv-00340 |
| HILL COUNTY, SHANE BRASSELL, JIM | § | |
| HOLCOMB, LARRY CRUMPTON, | § | |
| Defendants. | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

RCM Hill, LLC, a Texas limited liability company (*Plaintiff*) sues HILL COUNTY (*Hill County*), a political subdivision of the State of Texas, and the three members of the Hill County Commissioners Court, SHANE BRASSELL (*Brassell*), JIM HOLCOMB (*Holcomb*), and LARRY CRUMPTON (*Crumpton*) (collectively, *Defendants*).

### NATURE OF SUIT

1. Plaintiff has spent over 16 months and invested nearly **$1** million to acquire the contractual rights to buy more than **800** acres of land in Hill County for an average price of roughly **$100,000** per acre and to secure the legal entitlements to develop a 1,235 Mega Watt data center there.

2. On May 12, 2026, in the face of growing opposition to data center development in Hill County, the Hill County Commissioners Court, by a vote of three to two, voted to adopt the Hill County, Texas, Green Energy and Data Center

Moratorium (the *Data Center Moratorium*).[1] Among other things, it categorically bars the commencement of construction pertaining to data center related projects in Hill County.

3.      The Data Center Moratorium is illegal under clearly established Texas law.  In fact, during the public hearing, Judge Brassell said, "*it's illegal*."  Moments later, Commissioner Holcomb admitted, "*it's against the law.*"  In a last-ditch effort to cobble together a lawful rationale for any moratorium, one member of the Commissioners Court asked David Holmes, the County Attorney, whether the proposed moratorium could be revised to make it legal. Mr. Holmes left no room for doubt; Holmes told the Commissioners: "Y*ou can revise it however you want. I don't believe you have the legal authority to enact [a moratorium].*"[2]

4.      Even though the Commissioners knew that the Hill County Commissioners Court did not have the lawful power to adopt the moratorium under longstanding and clearly established Texas law, Judge Brassell, Commissioner Holcomb, and Commissioner Crumpton cast *ultra vires* votes to adopt the illegal moratorium anyway.  By doing so, Judge Brassell, Commissioner Holcomb, and Commissioner Crumpton not only violated their oaths of office but

---

[1] A true and correct copy of the Data Center Moratorium is attached as **Exhibit A**.

[2] The words in brackets as — "a moratorium" — are somewhat garbled in the recording.

also caused Hill County to adopt an unlawful moratorium.  Under color of state law, this moratorium deprives Plaintiff of its property, contract, development, and due process rights under the "Constitution and laws of the United States and of this State."[3] Plaintiff brings this suit against Defendants for redress of these violations of its constitutional and statutory rights under federal and state law. Defendants' actions are unlawful and unjust.

## PARTIES

5.      Plaintiff, **RCM Hill, LLC**, is a Texas limited liability company with its principal place of business in Texas.  Plaintiff has existing contracts to buy more than **800** acres of land in an unincorporated area of Hill County for more than **$80** million for development of a data center project.

6.      Defendant, **HILL COUNTY**, is a county and political subdivision of the State of Texas with its principal place of business in Hill County, Texas.  It may be served with process by serving the Hill County Judge, **SHANE BRASSELL**, at the

---

[3] Article XVI, Section 1 of the Texas Constitution, requires members of a commissioners court to take the following oath:

"I, _____, do solemnly swear (or affirm), that *I will faithfully execute the duties of the office* of _____ of the State of Texas, and *will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State*, so help me God."

County Courthouse of Hill County, 1 N. Waco St, Hillsboro, Texas 76645, or wherever else he may be found.

7.    Defendant, **SHANE BRASSELL**, is the sitting County Judge for Hill County, Texas, and is a resident of Hill County.  He may be served with process at the County Courthouse of Hill County, 1 N. Waco St, Hillsboro, Texas 76645, or wherever else he may be found.

8.    Defendant, **JIM HOLCOMB**, is the sitting County Commissioner, Precinct 1, for Hill County, Texas, and is a resident of Hill County.  He may be served with process at the County Courthouse of Hill County, 1 N. Waco St, Hillsboro, Texas 76645, or wherever else he may be found.

9.    Defendant, **LARRY CRUMPTON**, is the sitting County Commissioner, Precinct 2, for Hill County, Texas, and a resident of Hill County.  He may be served with process at the County Courthouse of Hill County, 1 N. Waco St, Hillsboro, Texas 76645, or wherever else he may be found.

**JURISDICTION AND VENUE**

10.    Plaintiff brings federal claims in this action for inverse regulatory takings of its legal entitlements and property rights without just compensation and for violations of its due process and other rights arising under the Fifth

Amendment to the United States Constitution, as incorporated and made applicable to the States by the Fourteenth Amendment. This Court has federal subject matter jurisdiction over this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331. Plaintiff also seeks declaratory and injunctive relief within this Court's jurisdiction under 28 U.S.C. § 2201.

11.    "[T]he existence of the Fifth Amendment right . . . allows the owner to proceed directly to federal court under [section] 1983."[4]

12.    Plaintiff also seeks (a) declaratory and injunctive relief against Hill County declaring the Data Center Moratorium is void and prohibiting its enforcement and (b) declaratory and prospective injunctive relief against County Judge Brassell, County Commissioner Holcomb, and Commissioner Crumpton prohibiting them from taking any actions in their official capacities in connection with the enforcement of the illegal Data Center Moratorium. This Court should grant such declaratory and injunctive relief within its jurisdiction to prevent the unconstitutional enforcement of the Data Center Moratorium under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908).

---

[4] *Knick v. Township of Scott*, 588 U.S. 180, 191 (2019) (explaining, at 588 U.S. 180 at 190-94, that state law substantive rights and procedural remedies for a taking do not displace self-executing rights and remedies under the Fifth Amendment's takings clause).

13.     Courts ordinarily consider claims against a government entity and against its officials in their official capacity to be practically redundant and dismiss the claims against the officials.[5]   The Commissioners egregiously, intentionally, and consciously disregarded their oaths, the rule of law, clearly settled Texas law, and Plaintiff's constitutional and statutory rights, and are accordingly named herein.

### *Supplemental Jurisdiction*

14.     This Court has supplemental jurisdiction over Plaintiff's state law declaratory judgment and other claims pursuant to 28 U.S.C. § 1367.   Plaintiff's state law claims are so related to claims in the action within this Court's original subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

---

[5] *See Marceaux v. Lafayette City – Parish Consol. Gov't*, 614 Fed. Appx. 705, 706 (5th Cir. 2015) (per curiam)) (affirming dismissal of official capacity claims against municipal officers as redundant of claims against the municipality).

### *Personal Jurisdiction*

15. This Court has personal jurisdiction over Hill County because Hill County is a political subdivision of the State of Texas in Hill County, Texas.

16. This Court has personal jurisdiction over Shane Brassell, Jim Holcomb, Larry Crumpton because each of them resides and holds elected office in Hill County, Texas.

### *Venue*

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Hill County is located within the Waco Division of the United States District Court for the Western Division of Texas, and because the individual defendants, Shane Brassell, Jim Holcomb, Larry Crumpton, each reside in Hill County.

18. A substantial part of the events giving rise to this action occurred in Hill County, Texas, where the Data Center Moratorium was adopted, where the property affected by it is situated, and where the Data Center Moratorium is being enforced in violation of Plaintiff's rights.

### STATEMENT OF FACTS

**A.** **Plaintiff secured contractual rights to acquire the Aquila Site in Hill County.**

19. Plaintiff is in the business of developing commercial real estate suitable for data center development. Identifying potentially suitable sites for data

center development is just the first step in a long, complicated, and expensive process.

20.     Plaintiff has worked over 16 months and has invested nearly **$1** million, in the aggregate, to acquire the contractual rights to purchase the tracts constituting the Aquila Site; to conduct due diligence to determine the site's suitability for Project Aquila by, among other things, procuring various surveys and environmental, biological, wetland, water, fiber, gas, and power generation studies; and, most importantly, to satisfy the threshold requirements to become and remain eligible for Batch Zero electrification entitlements.

21.     Between April 2025 and January 2026, Plaintiff entered into four contracts with four different landowners.  Together, these contracts grant Plaintiff the right to buy four contiguous parcels of land containing an aggregate of more than **800** acres (the *Aquila Site*) in an unincorporated area of Hill County. Plaintiff has contracted to pay more than **$80** million, in the aggregate, to the four owners of the Aquila Site.

22.     Plaintiff put the Aquila Site under contract for development of a data center project (the *Project Aquila*).  Without data center development rights, the market value of the land comprising the Aquila Site would be its agricultural

value, which is but a small fraction of the purchase price reflected in these four contracts. At the contracted prices, use of the Aquila Site as a data center is the only economically viable use. The Data Center Moratorium accordingly threatens to destroy all economic value of the Aquila Site to Plaintiff.

23. Plaintiff conducted due diligence to determine whether the Aquila Site could be used for the contemplated use as a data center. This is the only use that economically justifies paying roughly **$100,000** per acre for agricultural land.

24. According to 2025 Hill County Appraisal District records, most of the land comprising the Aquila Site is appraised at a fair market value of **$7,100** per acre, about one-fourteenth or **7.1%** of the average per acre purchase price in Plaintiff's contracts with landowners. The Data Center Moratorium prevents the only use that justifies the roughly **$100,000** per acre purchase price, reduces the land to something close to **$7,100** per acre agricultural value, and thus reduces the *value of Plaintiff's contract rights* to buy land worth roughly **$7,100** per acre for an average price of **$100,000** per acre to *less than zero*.

25. Plaintiff independently confirmed that the Aquila Site is located in an unincorporated area of Hill County and is not located within any municipality or its extraterritorial jurisdiction in Hill County.

---

26.    In connection with its due diligence, Plaintiff also asked for and received confirmation from the Hill County Commissioners Court that Plaintiff's contemplated industrial data center development at the Aquila Site did not require Hill County approval and that the Aquila Site was not subject to any Hill County zoning or land use requirements or restrictions.

27.    Shane Brassell, the Hill County Judge, signed the following statement in a letter provided to Plaintiff on the Hill County Commissioners Court's letterhead:

> **Hill County is not under a zoning plan, nor does it require a building permit. Also at this time it does not require any type of Certificate of Occupancy for housing. Hill County does require a permit for On-Site Septic Facilities**.

This written confirmation was critical to Plaintiff's suitability determination and to Plaintiff's ability to satisfy the conditions that enabled Plaintiff to become eligible for inclusion in Batch Zero, the large load electrification entitlement crucial to the success of Project Aquila as a data center development.

**B.    Plaintiff's eligibility for inclusion in Batch Zero has been confirmed, but the Data Center Moratorium puts Plaintiff's ability to remain eligible in grave jeopardy.**

28.    Batch Zero is a one-time transmission and load planning process developed by the Electric Reliability Council of Texas (*ERCOT*).  This process is

intended to capture all large load growth for mature load projects in the State of Texas.  For the first time, it enables ERCOT to:

- Conduct system-wide steady-state and stability screening studies for future years (*e.g.*, 2028–2032)
- Determine transmission upgrades required to support large load allocations
- Allow large load customers to secure power allocations for projects that meet study and commitment requirements, ensuring their capacity is secured

To accomplish these objectives, ERCOT's Batch Zero process divides large load projects into three categories:

- **Base Load**: Projects already energized or sufficiently mature, with completed studies and equipment procurement, which are not subject to further study

- **Studied Load**: Projects meeting eligibility criteria but requiring reliability assessment and capacity allocation, which are included in Batch Zero

- **Excluded/Future Batch**: Projects that do not meet Batch Zero criteria and must wait for a future batch study

27. Eligibility for inclusion in Batch Zero is specific to the Interconnecting Large Load Entity (*ILLE*) and to each site.  ERCOT has recognized Plaintiff as the ILLE for the Aquila Project.  As the ILLE for the Aquila Project, Plaintiff satisfied (in chronological order) the ERCOT milestones necessary to secure essential electrification entitlements for data center operations at the Aquila Site:

- **Jan. 17, 2025** — Plaintiff submitted the Lone Star Transmission, LLC (*LST*) Load Questionnaire and subsequently updated it on August 8, 2025.

- **Apr. 24, 2025** — Plaintiff entered into a Load Interconnection Study Agreement (also styled the Full Interconnection Study Agreement) and paid the required **$183,000** study prepayment.

- **Aug. 22, 2025** — The consultant issued a Steady-State Study Report to the transmission service provider (*TSP*).

- **Dec. 22, 2025** — Plaintiff executed the Hilco Electric Cooperative, Inc. Project Cost Payment Agreement and funded the **$100,000** deposit.

- **Jan. 20, 2026** — Notably, Brazos Electric Power Cooperative, Inc.'s Board of Directors approved the construction of improvements and the preliminary construction budget for the direct interconnection facilities; the corresponding Point of Delivery Request was submitted through Hilco Electric Cooperative, Inc.

- **Feb. 17, 2026** — Plaintiff issued disclosures compliant with Public Utility Commission of Texas Project No. 58481 to the relevant interconnecting utilities.

28.    On May 12, 2026, Plaintiff received formal notice from the lead transmission service provider for the Aquila Project that ERCOT had approved (a) the Steady State Study Report, and (b) the Stability Study for the Aquila Project. With these approvals, Plaintiff formally became eligible to be included in Batch Zero as a Studied Load under ERCOT's Planning Guide Revision Request (*PGRR*) 145, Section 9.2.1.2.[6]

---

[6] The May 12, 2026, notice was provided telephonically by Sunil Dhakal, the lead planning engineer for Lone Star Transmission, LLC (the *Lead Transmission Service Provider*).

29.     Even though Project Aquila has been approved for inclusion in Batch Zero as a Studied Load, Plaintiff must continually satisfy certain conditions established by ERCOT for Project Aquila to remain eligible for inclusion in Batch Zero.

30.     One of those conditions is contained in ERCOT's Discretionary Approvals Rule.[7]  To become and to remain eligible for inclusion in Batch Zero, the interconnecting DSP or TSP must inform ERCOT that the Plaintiff (as the ILLE) has attested that:

> *"[**Plaintiff**] **has obtained all discretionary approvals required by the**
>
> **applicable municipality or governmental entity at the location where**
>
> **the ILLE is requesting interconnection**."*[8]

ERCOT's recently updated Discretionary Approvals Rule extends the next reporting deadline for compliance with this condition until July 24, 2026.[9]

31.     The County Commissioners Court's prior written statement enabled Plaintiff to attest that either (i) it held all discretionary approvals required at the Aquila Site or (ii) did not require any such approvals.  Since then, Plaintiff has been

---

[7] ERCOT Planning Guide § 9.2.1.1(1)(f), as revised by ERCOT staff comments to PGRR 145 dated May 15, 2026.

[8] *Ibid*.

[9] *Ibid*.

able to make the required attestations when required without interruption, until May 12, 2026, the day the Hill County Commissioners Court adopted the Data Center Moratorium.

32.     As long as the Data Center Moratorium remains in place, Plaintiff can no longer make the required attestations.  The Data Center Moratorium, by its terms, introduces an improper discretionary, pre-construction approval process.

33.     ERCOT's Discretionary Approval Rule is binary. To remain eligible for Batch Zero, Plaintiff must either (a) hold all required discretionary approvals at the interconnection location, or (b) attest that no such approval is required and provide a supporting statement to this effect.  Due solely to the Data Center Moratorium, Plaintiff can no longer satisfy either condition in ERCOT's Discretionary Approval Rule, which unambiguously disqualifies Plaintiff from remaining eligible for ERCOT's Batch Zero process.  This rule states that ERCOT "*shall not* include in Batch Zero any Large Load that does not meet [the] requirements described . . . ."  As a result of the Hill County Commissioners Court's unlawful adoption of the Data Center Moratorium, these consequences follow:

> (a)     **Plaintiff cannot make section 9.2.1.1(1)(f) attestations.** The Data Center Moratorium makes it impossible for Plaintiff to attest either that

it holds all necessary discretionary approvals or that no discretionary approvals are required.

(b)   **Plaintiff is at grave risk of losing Batch Zero base-load eligibility.** PGRR 145 § 9.3.1(2)(a) requires that Plaintiff satisfy the above conditions by the deadlines prescribed below:

- **July 10, 2026** — By this date, the load customer must be able to meet all attestation requirements and must provide those attestations to the Interconnecting TSP or DSP; but the Data Center Moratorium, unless irrevocably rescinded by Hill County, makes it impossible for Plaintiff to make the required attestations that comply with ERCOT's rules.

- J**uly 24, 2026** — Interconnecting DSPs or TSPs must submit the load customer's information (including the attestations) to ERCOT. Absent the attestations, removal of Project Aquila from Batch Zero, by rule, is required and is almost certain.

- **August 7, 2026** — ERCOT will classify each Large Load. Because the Data Center Moratorium prevents Plaintiff from satisfying the conditions in ERCOT's Discretionary Approval Rules, ERCOT — by rule— must remove Project Aquila from Batch Zero before ERCOT classifies its load, which delays Project Aquila by pushing approval by a year or more under ERCOT's planning schedule.

(c)   **Collapse of tenant and developer interest.**   Before the Hill County Commissioners Court adopted the Data Center Moratorium, Project Aquila had attracted significant interest from large colocation providers and hyperscale data center tenants and developers. Once news of the Data Center Moratorium made national headlines and called into question the viability of data center developments in Hill County, those discussions came to an abrupt halt, pending resolution of the legality of Hill County's action.

(d)    **Impairment of the Batch Zero deposit capital raise.**  Before the Hill County Commissioners Court adopted the Data Center Moratorium, there was high investor and lender interest in funding this partially refundable **$61,750,000** capacity deposit.  As soon as Plaintiff disclosed the adoption of the Data Center Moratorium to potential funding sources, interest collapsed.  Formerly interested funding sources expressed grave reservations about investing in, or lending to, a data center project subject to newly imposed discretionary approvals, probable litigation with Hill County, and operations in a jurisdiction that cannot be relied on to comply with its own laws.

34.    The Data Center Moratorium is now the one and only thing preventing Plaintiff from making the attestations ERCOT requires.  But for unlawful Data Center Moratorium, Plaintiff could satisfy Section 9.2.1.1(f) today; unless the moratorium is immediately rescinded, Plaintiff cannot make the required attestations, and Project Aquila is at grave risk of being disqualified or removed from Batch Zero.[10]

35.    Plaintiff must pay, before its land contracts expire, over **$80** million to close the purchases of the four tracts of land on the Aquila Site.  Critically, to maintain eligibility for inclusion in Batch Zero, Plaintiff must also post a capacity deposit of **$50,000** per megawatt.  Based on Project Aquila's 1,235 MW capacity,

---

[10] ERCOT Planning Guide § 9.2.1.1(1)(f), as revised by ERCOT staff comments to PGRR 145 dated May 15, 2026.

the required deposit totals **$61,750,000** (1,235 MW × $50,000/MW). Plaintiff must post that deposit by July 24, 2026.

36. Because the Data Center Moratorium is causing immediate and irreparable harm to Plaintiff and Project Aquila, Plaintiff will suffer immediate and irreparable harm, unless Hill County irrevocably rescinds the Data Center Moratorium or this Court declares it void *ab initio*, unenforceable, and of no force and effect and enjoins its enforcement.

**D. The Texas Constitution and statutes limit the Hill County Commissioners Court express and implied powers.**

37. Before turning to the particulars of the Data Center Moratorium, however, a review of the pervasive limits on the Hill County Commissioner Court's powers as a subdivision of Texas state government is in order.

38. "The authority vested in Texas counties—and county officials—is limited."[11] Texas counties are "legal subdivisions of the State,"[12] "subordinate and derivative branch[es] of state government"[13] that "represent no sovereignty distinct from the state and possess only such powers and privileges as have been

---

[11] *State v. Hollins*, 620 S.W.3d 400, 406 (Tex. 2020).

[12] *Id.* at 403 (quoting TEX. CONST. art. XI, § 1).

[13] *Hollins*, 620 S.W.3d at 403-04 (quoting *Avery v. Midland County*, 406 S.W.2d 422, 426 (Tex. 1966), *vacated on other grounds*, 390 U.S. 474(1968)).

expressly or impliedly conferred upon them."[14]   "Counties and their commissioners' courts are . . . not only the creatures of the State Constitution, but they are under the continuous control and domination, within constitutional bounds, of the State Legislature."[15]  Before a county official can take "any action," that action's "legal basis . . . must be grounded ultimately in the constitution or statutes."[16]

39.    As Article V, section 18 of the Texas Constitution makes clear, "[t]he legislative power of the commissioners courts derives from the Legislature[:]"[17]

> "A commissioners court shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may hereafter be prescribed."[18]

"Political subdivisions of the state—such as counties [and general law] municipalities—represent no sovereignty distinct from the state and possess only such powers and privileges as have been expressly or impliedly conferred upon them."[19]  In sum, the Texas Constitution "does not confer on the commissioners

---

[14] *Hollins*, 620 S.W.3d at 404 (cleaning up and quoting *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 430 (Tex. 2016)).

[15] *Orndorff v. State*, 108 S.W.2d 206, 210 (Tex. Civ. App.—El Paso 1937, no pet).

[16] *Hollins*, 620 S.W.3d at 404 (*Guynes v. Galveston County*, 861 S.W.2d 861, 863 (Tex. 1993) (citation omitted)).

[17] *Commissioners Court of Shelby County v. Ross*, 809 S.W.2d 754, 757 (Tex. App.—Tyler 1991, no pet.).

[18] TEXAS CONST. art. V, § 18; *see Canales v. Laughlin*, 214 S.W.2d 451, 453 (Tex. 1948).

[19] *Hollins,* 620 S.W.3d at 406.

courts '*general authority over the county business*' and such courts can exercise only such powers as the Constitution itself or the statutes have 'specifically conferred on them.'"[20]

40.    In *State v. Hollins*, the Texas Supreme Court recently reaffirmed that this century-old "undisputed proposition of law" applies to and limits the powers of Texas counties and commissioners courts. Unlike a home rule city,[21] a county court, like a general law municipal corporation, only:

> possesses and can exercise the following powers, and no others: First, those *granted in express words*; second, those *necessarily or fairly implied* in or incident[] to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but *indispensable. Any* fair, *reasonable*, substantial *doubt* concerning the existence of power is

---

[20] *Canales v. Laughlin*, 214 S.W.2d 451, 453 (Tex. 1948) (emphasis added) (citing and quoting *Mills County v. Lampasas County*, 40 S.W. 403, 404 (Tex. 1897); *see Anderson v. Wood*, 52 S.W.2d 1084, 1085 (Tex. 1941).

[21] *City of San Antonio v. City of Boerne*, 111 S.W.3d 22 (Tex. 2003) (discussing differences between the legal powers and authority of a home rule municipality and a county commissioners court; on the one hand, a home rule municipality possess independent legislative jurisdiction and inherent general police powers and thus broad legislative discretion to enact ordinances and to execute and administer the ordinances and polices its adopts to promote the general welfare as it sees fit; and a home rule municipality may take exercise its legislative jurisdiction, enforce its ordinances, and exercise its general police powers in its discretion, *except to the extent prohibited* by federal or state constitutional and statutory law; on the other hand, a county, or general law municipality, possesses *no* independent legislative jurisdiction, *no* inherent general police power, and no independent power adopt orders or perform its duties, e*xcept to the extent and in the manner authorized* by the Texas Constitution or Texas statutes).

---

resolved by the courts against the corporation, *and the power is denied*.[22]

The Texas Supreme Court, in its opinions since *Foster*, has repeatedly clarified what it meant in *Foster* and has repeatedly confirmed that it meant what it said in *Foster*. When a county contends that its power to take an action is "necessarily or fairly implied" from an express constitutional or statutory grant, the action taken "must . . . be indispensable,"[23] "'not simply convenient.'"[24] "*Any* fair, *reasonable*, substantial *doubt* concerning the existence of power is resolved by the courts against the corporation, *and the power is denied*.[25] Here, there is no doubt that the Hill County Commissioners Court exceeded its lawful powers by adopting the Data Center Moratorium. Use of a power the Commissioners Court does not possess must be ***denied***.

E.      **Under clearly established Texas law, the Data Center Moratorium exceeds the limits of the Hill County Commissioners Court's lawful powers, and**

---

[22] *Hollins*, 620 S.W.3d at 406 (quoting *Foster v. City of Waco*, 255 S.W. 1104, 1105-1106 (Tex. 1923) (*Hollins* adds emphases in quoted text that are not present in *Foster*).

[23] *Hollins*, 620 S.W.3d at 404 (citing *Tri-City Fresh Water Supply District No. 2 of Harris County v. Mann*, 142 S.W.2d 945, 947 (Tex. 1940) (stating that "powers which are not expressed and which are merely convenient or useful may not be included and cannot be maintained" and that that when "powers are granted to a municipality by specific provisions, such powers are not enlarged by general language found elsewhere in the act).

[24] *See Hollins*, 620 S.W.3d at 406 (applying "undisputed proposition of law in *Foster* to county official and determining that action was not authorized by expressly by statute or by necessary implication).

[25] *Foster*, 255 S.W. 1105-1106.

---

**Brassell, Holcomb, and Crumpton knew this moratorium was illegal before they cast their *ultra vires* votes to adopt it.**

41.     On May 12, 2026, the Hill County Commissioners Court took up Agenda Item No. 7, "Discussion and/or action regarding placing a potential temporary moratorium on certain large-scale industrial energy storage, power generation, and data processing construction activities within the unincorporated areas of Hill County, Texas."

42.     At the public hearing, the County Judge, other Commissioners, and the County Attorney had no reasonable doubt that the Hill County Commissioners Court lacked the lawful power to adopt the proposed Data Center Moratorium. The said so.

43.      Before voting for it, County Judge Brassell, flatly stated at the public hearing, "*it's illegal*."  Despite knowing it was illegal, Judge Brassell voted for it.

44.     On hearing this, Commissioner Scotty Hawkins said, "*we're not against doin' it [adopting a moratorium], but I wanna do it the right way*." Hawkins was good to his word, did the right thing, and voted against the moratorium because it was illegal not because he was against it.

45.     In response to Hawkins' statement, Commissioner Jim Holcomb stated the obvious: "*there's no right way to do it, . . . cause it's against the law*."

Hawkins, who ultimately voted against it, blurted out, "*exactly*." Bemused by Holcomb's statement, Judge Brassell, who said he was against the moratorium before he voted for it, smiled, shook his head, looked down, and then chuckled uncomfortably to himself.  Holcomb conceded that "*we're out over our skis here*." Undeterred by the moratorium's illegality, however, Holcomb voted for it anyway.

46.     Then, in a last-ditch effort to cobble together some legal justification, one member of the Commissioners Court asked David Holmes, the County Attorney, whether the proposed moratorium could be revised to make it legal. Mr. Holmes left no room for doubt; Holmes told the Commissioners:  "Y*ou can revise it however you want.  I don't believe you have the legal authority to enact [a moratorium].*"[26]

47.     Knowing full well that the Commissioners Court lacked any legal authority to adopt the Data Center Moratorium, Brassell, Holcomb, and Crumpton cast reckless *ultra vires* votes to adopt the moratorium. By doing so, they knowingly cast aside their oaths to support and defend the Constitution and the laws of Texas and of the United States and imperiled the rule of law. As the United

---

[26] The words in brackets as, "a moratorium", sound somewhat garbled in the recording.

States Supreme Court stated in *Mapp v. Ohio*:

> Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence. 'Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. . . . If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.'[27]

When Brassell, Holcomb, and Crumpton cast *ultra vires* votes for the illegal Data Center Moratorium, Hill County government became a lawbreaker. The illegal Data Center Moratorium continues to undermine the rule of law, to violate the constitutional rights of Plaintiff, and to expose Hill County (and, ultimately, its taxpayers) to liabilities and damages to Plaintiff in excess of **$100** million.

48.     A colorable argument for the validity of the Data Center Moratorium is difficult, if not impossible, to conceive; one has not yet been offered.[28]  Simply put, the Hill County Commissioners Court lacks any lawful power to adopt, maintain, or enforce a categorical ban on the commencement of construction of data centers and related facilities.

49.     Neither the Texas Constitution nor any Texas statute—*by its express*

---

[27] *Mapp v. Ohio*, 367 U.S. 343, 359 (1961) (quoting *Olmstead v. US*, 277 U. S. 438, 485 (1928)).

[28] *See* OP. TEX. ATTY. GEN. AC 0003 (August 16, 2023), Attorney General Opinion No. AC-0003, https://www.texasattorneygeneral.gov/sites/default/files/opinion-files/opinion/2023/ac-0003.pdf (opining that Franklin County lacks the lawful power to adopt solar power moratorium).

*terms*— empowers the Hill County Commissioners Court to adopt a moratorium of any kind.

50.     Neither the Texas Constitution nor any Texas statute — by necessary implication — empowers the Hill County Commissioners Court to adopt a moratorium of any kind.

51.     Neither the Texas Constitution nor any Texas statute — by its express terms or by necessary implication — empowers the Hill County Commissioners Court to adopt a moratorium barring the commencement of construction for industrial development in the unincorporated areas of Hill County.

52.     The Data Center Moratorium irrationally imposes on nascent data center developments, which have not yet commenced construction, the entire cost and burden of the unlawful moratorium.  It excludes other types of industrial developments from its scope and its burdens.

53.     Neither the Commissioners Court nor its Data Center Moratorium identify any constitutional or express statutory grant of power that "necessarily or fairly implie[s]" the power to adopt a categorical moratorium on the commencement of construction of data center developments, which moratorium, is "'indispensable" to the fulfilment of the express statutory power.  Instead the

moratorium appears to be a "convenient" (and unlawful) pretext for stopping data center development in Hill County by any means necessary, lawful or unlawful.

54.    Neither the Texas Constitution nor any Texas statute grants a general police power to county governments or commissioners courts.[29]  The Data Center Moratorium recites vaguely that the Data Center Moratorium, in some unexplained way, will promote the public welfare with respect to certain subjects on which some Texas unidentified statute imposes on Hill County some specific duty to be named later.  Hill County cannot establish that the power to impose the Data Center Moratorium is *necessarily implied* from any express power in an extant statute or that the implied power it is *indispensable* to the accomplishment of that express statutory duty.

## F.    Irreparable Legal Harms Suffered by Plaintiff

55.    The adoption of the Data Center Moratorium, Hill County's refusal to rescind it in response to Plaintiff's written demand, and Hill County's stated intention to enforce it are causing and will continue to cause immediate and irreparable harm to Plaintiff by either delaying Project Aquila or sinking it.

---

[29] *See Canales*, 214 S.W.2d at 453 (stating that commissioners courts lack general authority over county business and may exercise only powers conferred by the Texas Constitution or statutes; and that legal basis for any commissioners-court action must ultimately be found in the Texas Constitution or Texas statutes); *see, e.g.*, *Hallco Texas, Inc. v. McMullen County*, 221 S.W.3d 50, 54 (Tex. 2006) (noting Texas counties generally have limited zoning authority and analyzing validity of county ordinance under specific statutory authorization)

---

## CAUSES OF ACTION

### COUNT I

**Against all Defendants**
**Declaratory Judgment under 28 U.S.C. §§ 2201 and 2202**
**and Texas Civil Practice and Remedies Code Chapter 37**

56.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

57.    An actual, present, and justiciable controversy exists between Plaintiff and Hill County concerning the validity, legal effect, and enforceability of the Data Center Moratorium.

58.    The Data Center Moratorium is final.  On the day after the Hill County Commissioners Court adopted the unlawful Data Center Moratorium, Plaintiff made written demand that the Hill County Commissioners Court rescind it on or before May 20, 2026.  The County Commissioners Court failed and refused to do so.  Any right to request a waiver conferred by Section 4 of the void Data Center Moratorium is excused because the moratorium itself is void and the standards for obtaining a waiver constitutionally infirm.

59.    Plaintiff's declaratory judgment actions are ripe.  Whether the Hill County Commissioners Court possesses the lawful power to adopt the Data Center Moratorium is predominantly, if not entirely, a legal issue.  The Data

Center Moratorium is final. A "definite and concrete" dispute exists between Plaintiff and Hill County over adverse legal interests. The validity of the Data Center Moratorium thus presents an actual, substantial controversy rather than a hypothetical or speculative one. Any facts necessary to decide whether the Data Center Moratorium exceeded the lawful powers of the Hill County Commissioners Court already exist.

60. Plaintiff holds rights, status, and legal relations affected by the Data Center Moratorium. Plaintiff holds contractual rights to acquire the Aquila Site. Plaintiff has incurred substantial pursuit costs and posted significant cash deposits. Plaintiff has pursued and secured legal entitlements for development of the Aquila Site as a data center.

61. As of May 12, 2026, ERCOT had confirmed that Plaintiff's Aquila Project was eligible for inclusion in ERCOT's Batch Zero electrification queue. This immensely valuable, project-specific electrification entitlement is critical to Plaintiff's ability to develop the Aquila Project as a 1,235 Mega Watt capacity data center.

62. By adopting the Data Center Moratorium, the Hill County Commissioners Court imposed a categorical countywide prohibition or pre-

construction approval restraints on the commencement or continuation of data-center-related development in unincorporated areas of Hill County. Project Aquila cannot commence construction under this moratorium.   The Data Center Moratorium is causing damage and other immediate and irreparable harm to Plaintiff.

63.    Hill County has no inherent general police power. As a Texas county and political subdivision, Hill County may exercise only those powers conferred on it by the Texas Constitution or by statute, either expressly or by necessary implication.[30]

64.    Neither the Texas Constitution nor any Texas statute expressly authorizes Hill County, the Hill County Commissioners Court, or any Hill County official to adopt a categorical construction moratorium of any kind, much less one singling out data center construction or data-center-related development in unincorporated areas of Hill County.

65.    Nor is such a categorical moratorium necessarily implied from any express power granted to Hill County. A general authority to conduct county business, protect county property, administer county roads, regulate subdivisions,

---

[30] *See Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006); *Canales v. Laughlin*, 214 S.W.2d 451 (Tex. 1948).

or perform other limited statutory functions does not necessarily imply the power to impose a countywide land-use moratorium barring or delaying a lawful use of private property in unincorporated area of Hill County.  Such a moratorium is not indispensable to Hill County's exercise of any express statutory power or any implied power necessarily implied from its express powers.

66.    The Data Center Moratorium is therefore *ultra vires*, outside Hill County's lawful powers, and void *ab initio*.

67.    The Data Center Moratorium also purports to create a discretionary county approval barrier to construction that did not exist when Plaintiff obtained Hill County's confirmation that Hill County did not have a zoning plan, did not require a building permit, and did not require a certificate of occupancy for the Aquila Site.  By adopting the Data Center Moratorium without lawful authority, Hill County has altered Plaintiff's legal relations, jeopardized Plaintiff's entitlement status, and, legally and practically impaired Plaintiff's ability to maintain Project Aquila's ERCOT Batch Zero eligibility.

68.    Plaintiff is entitled to a declaration under 28 U.S.C. §§ 2201 and 2202 and, through the Court's supplemental jurisdiction, under Texas Civil Practice and Remedies Code Chapter 37, that the Data Center Moratorium exceeds Hill

County's constitutional and statutory authority, is *ultra vires*, is void *ab initio*, and has no force or effect.

69.     Plaintiff further seeks all necessary and proper supplemental relief, including preliminary and permanent injunctive relief preventing Hill County and those acting in concert with it from enforcing, applying, relying on, or giving effect to the Data Center Moratorium.

## COUNT II
### Declaratory and Prospective Injunctive Relief
### against Brassell, Holcomb, and Crumpton

70.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

71.     Defendants, Shane Brassell, Jim Holcomb, and Larry Crumpton, are members of the Hill County Commissioners Court and are being sued in their official capacities for prospective declaratory and injunctive relief to restrain *ultra vires* governmental action.

72.     An actual, present, and justiciable controversy exists between Plaintiff and Brassell, Holcomb, and Crumpton concerning whether they had, or have, lawful authority to adopt, maintain, implement, enforce, or give effect to the Data Center Moratorium.

73.    Texas law permits suits against governmental officials in their official capacities to require them to comply with statutory or constitutional limits, and governmental immunity does not bar prospective relief against officials alleged to have acted without legal authority or to have failed to perform a purely ministerial act.[31] The legal duty vote against the moratorium is ministerial because the Commissioners Court has no discretion under the Texas Constitution or any Texas Statute to adopt or enforce it.

74.    Brassell, Holcomb, and Crumpton knowingly acted without legal authority by voting for and thus causing the adoption of the Data Center Moratorium. Legislative immunity may protect the Commissioners, who exercised powers they did not possess.  But qualified immunity does not protect them to the extent they directly participate or enable enforcement of the Data Center Moratorium.

75.    Brassell, Holcomb, and Crumpton continue to exceed  their lawful authority by maintaining, implementing, threatening to enforce, or giving effect to the Data Center Moratorium after its adoption.

---

[31] *See City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009).

76.     Because Hill County had no lawful power to adopt the Data Center Moratorium, Brassell, Holcomb, and Crumpton had no lawful power to vote for it, cause its adoption, maintain it, enforce it, apply it, or rely on it.  Their *ultra vires* enforcement actions have impaired, and continue to materially impair Plaintiff's property rights, contract rights, legal entitlements, ERCOT Batch Zero eligibility, and other reasonable investment-backed expectations of Plaintiff.

77.     Plaintiff is entitled to a declaration that Brassell, Holcomb, and Crumpton's votes for the Data Center Moratorium and any acts to maintain, enforce, apply, or give effect to it are *ultra vires* and legally void.

78.     Plaintiff is further entitled to prospective injunctive relief under Texas law prohibiting Brassell, Holcomb, Crumpton, and all persons acting in concert with them from enforcing, applying, relying on, or giving effect to the Data Center Moratorium in any manner, including by treating it as a discretionary approval requirement, pre-construction condition, development prohibition, construction prohibition, permitting requirement, or  impediment, legal or practical, to Project Aquila's ERCOT Batch Zero eligibility.

## REQUESTED DECLARATIONS

79.     Plaintiff respectfully requests that the Court enter judgment declaring that:

(a)     No provision of the Texas Constitution or of any Texas statute authorizes Hill County, the Hill County Commissioners Court, or any Hill County official to adopt, maintain, implement, enforce, or give effect to the Data Center Moratorium.

(b)     The Data Center Moratorium adopted on May 12, 2026 exceeds Hill County's lawful powers.

(c)     The Data Center Moratorium is *ultra vires*, void *ab initio*, and of no legal force or effect.

(d)     The votes cast by Brassell, Holcomb, and Crumpton in favor of the Data Center Moratorium were *ultra vires* and legally ineffective to create any valid county law, order, regulation, moratorium, permitting requirement, discretionary approval requirement, development prohibition, or pre-construction condition contained in the Data Center Moratorium.

(e)     Hill County, Brassell, Holcomb, Crumpton, and all persons acting in concert with them may not enforce, apply, rely on, or give effect to the Data Center Moratorium.

(f)     The Data Center Moratorium does not establish as a required discretionary approval, pending discretionary approval, permitting condition, construction prohibition, development prohibition, or governmental impediment to Project Aquila or to Plaintiff's ability to make or support ERCOT-related discretionary-approval attestations.

80.     Plaintiff is entitled to, and requests that the Court award, such other and further necessary or proper relief under 28 U.S.C. § 2202 and Texas Civil Practice and Remedies Code Chapter 37 as the Court deems just and appropriate.

## COUNT III

### Against Hill County
### Regulatory Taking and Inverse Condemnation under
### the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983

81.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

82.     Plaintiff's claim under the Fifth Amendment's Takings Clause is ripe. Plaintiff may proceed directly in federal court under 42 U.S.C. § 1983 for a Fifth Amendment taking.[32]

83.     The Data Center Moratorium is final and presently injures Plaintiff because it creates the very discretionary approval impediments that, among other things, prevent Plaintiff from maintaining ERCOT Batch Zero eligibility.

84.     Hill County has not paid or offered just compensation to Plaintiff for the taking of Plaintiff's property interests and legal entitlements.

85.     Plaintiff made written demand that Hill County rescind the Data Center Moratorium.  Hill County has failed and refused to do so.

86.     No post-taking action by Hill County nullifies the Plaintiff's existing Fifth Amendment right: "[W]here the government's activities have already

---

[32] *See Knick,* 588 U.S. at 192.

worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation."[33]

87.    Plaintiff suffered a compensable taking at the moment the Hill County Commissioners Court adopted the Data Center Moratorium, even though the Commissioners Court lacked the lawful power to adopt or enforce it.

88.    The Takings Clause is self-executing.[34] "[T]he Fifth Amendment right to compensation automatically arises at the time the government takes property without paying for it."[35]  This is so because "government action that works a taking of property rights necessarily implicates the 'constitutional obligation to pay just compensation.'"[36]

89.    As a logical corollary, a plaintiff in a takings case under the Fifth Amendment is entitled to compensation for a temporary taking.[37]  Moreover, a government's post-taking actions (including repeal of the challenged order)

---

[33] *Knick*, 588 U.S. at 192.

[34] *Knick*, 588 U.S. at 191 (stating that "'the self-executing character' of the Takings Clause 'with respect to compensation' [means that] a property owner has a constitutional claim for just compensation at the time of the taking.'"

[35] *Id*.

[36] *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles*, 482 U.S. 304, 315 (1987).

[37] *First English Evangelical Lutheran Church*, 482 U.S. at 315 (holding that when government action amounts to a taking, Fifth Amendment requires compensation for the period during which the taking was effective, even if the regulation is later withdrawn or invalidated); *Penn Central Transp. Co.*, 438 U.S. at 124.

---

cannot nullify a plaintiff's existing Fifth Amendment right to compensation: "[W]here the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation."[38]   The same rule applied in *per se* takings cases also applies to takings under *Penn Central Transportation Co. v. New York City.*[39]

90.   Hill County's Data Center Moratorium unreasonably interferes with Plaintiff's contract rights to acquire and develop the Aquila Site as a data center, and it is causing the loss of all economically viable use of the Aquila Site.  The Data Center Moratorium constitutes either a *per se* taking, or in the alternative, and inverse regulatory taking under *Penn Central* factors, which govern regulatory takings.[40]

91.   Because Plaintiff is entitled to compensation for any taking the moment the Data Center Moratorium went into effect, Plaintiff is not required to first exhaust state law remedies to bring suit in federal court.[41]  In addition, no state administrative remedies exist to exhaust.

---

[38] 482 U.S. at 321.

[39] 438 U.S. 104 (1978).

[40] *Penn Central Transp. Co. v. New York City,* 438 U.S. 104 (1978); *see Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 933-34 (Tex. 1998) (employing a similar analysis for Texas taking violations).

[41] *Knick,* 588 U.S. at 191.

92.    Hill County, acting without lawful authority but under color of state law, deprived Plaintiff of its rights under the Fifth Amendment, as incorporated against the States through the Fourteenth Amendment, not to have its development rights, legal entitlements, and private contract and property rights taken for public use without just compensation.

93.    Plaintiff has constitutionally protected property interests in, among other things, its contractual and other rights to acquire the Aquila Site, its deposits and pursuit costs, its project-specific development and electrification entitlements, its ERCOT Batch Zero eligibility, and related legal status, and its reasonable investment-backed expectations for Project Aquila.

94.    Hill County, acting under color of state law, through the Hill County Commissioners Court, adopted, maintains, and professes its intent to enforce the illegal Data Center Moratorium. Because of "the self-executing character" of the Takings Clause with respect to compensation, "the Fifth Amendment right to compensation automatically arises at the time the government takes property without paying for it."[42]

---

[42] *Knick*, 588 U.S. at 191-92.

95.     Because the Data Center Moratorium constitutes a final government action that works a taking of property rights, it necessarily implicates the constitutional obligation to pay just compensation. Moreover, because a property owner is entitled to compensation for even the temporary loss of its property, the fact the Data Center Moratorium is of limited duration (one year) does not eviscerate Plaintiff's right to just compensation.[43]

96.     The Data Center Moratorium substantially interferes with Plaintiff's protected property interests by imposing a categorical moratorium barring commencement of construction, imposing discretionary approval conditions and pre-construction restraints, and prohibiting construction on data-center-related developments on the Aquila Site, which is situated in an unincorporated area of Hill County.

97.     The Data Center Moratorium denies Plaintiff all economically viable use of the Aquila Site for the only use that justifies the more than **$80** million aggregate contract price for the land.

98.     The Data Center Moratorium has destroyed, impaired, or substantially diminished Plaintiff's reasonable investment-backed expectations.

---

[43] *Knick*, 588 U.S. at 192.

Before adoption of the Data Center Moratorium, Plaintiff had spent more than 16 months and invested more than **$800,000** in pursuit costs and deposits to acquire and develop Project Aquila, to satisfy ERCOT Batch Zero eligibility requirements, and to preserve Batch Zero eligibility.

99. The Data Center Moratorium has caused, or will imminently cause, Plaintiff to lose Project Aquila's Batch Zero eligibility because it prevents Plaintiff from attesting that it has obtained all discretionary governmental approvals required for the interconnection location or that no such approvals are required.

100. The economic impact of the Data Center Moratorium on Plaintiff is severe and disproportionate. Project Aquila's viability depends on near-term Batch Zero inclusion. The unlawful Data Center Moratorium jeopardizes rights to remain eligible for inclusion in Batch Zero, threatens to cause a roughly two-year delay electrification of Project Aquila as a result of the addition of discretionary development approvals. Loss of inclusion in the Batch Zero financing window would destroy or substantially impair Project Aquila and cause losses running into the hundreds of millions of dollars.

101. Hill County's blatantly unlawful governmental regulatory actions effect an uncompensated taking. Hill County did not merely adjust benefits and

burdens under a lawful land-use regime. It had no land-use regime. Instead, almost two years after Plaintiff began investing in its project, Hill County adopted a It knowingly adopted an unlawful, categorical moratorium that singles out data-center-related development and imposes a newly created county approval barriers that Hill County has no legal power to impose or enforce. These barriers, like the Data Center Moratorium that creates it, are *ultra vires* and, therefore, unlawful and void.

102.    Hill County's actions constitute a compensable regulatory taking under the factors recognized in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978).

103.    "The Fifth Amendment's guarantee . . . [is] designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."[44] To prevent this injustice, *Penn Central Transportation* requires courts to consider:

>   (a)    "[W]hether a particular restriction will be rendered invalid by the government's failure to pay for any losses proximately caused by it depends largely "upon the particular circumstances [in that] case."[45] .

---

[44] *Armstrong* v. *United States*, 364 U.S. 40, 49 (1960).

[45] *Penn Central Transportation Co. v. New York City*, 438 U.S. at 124 (quoting *United States* v. *Central Eureka Mining Co.*, 357 U.S. 155, 168 (1958)); see *United States* v. *Caltex, Inc.*, 344 U.S. 149, 156 (1952).

(b)    The Data Center Moratorium singles out data center projects and imposes the entire burden and cost of the moratorium on data centers development, which have not yet commenced construction, for the ostensible benefits to the entire county of examining the impact of all industrial development—not just data center development—in Hill County over the next year.

104.    *Penn Central Transportation* requires court evaluate regulatory takings cases using "essentially ad hoc, factual inquiries," addressing several factors of particular significance, including "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations."[46]

105.    Hill County's inverse regulatory taking of Plaintiff's property and development rights goes too far, especially given the Hill County "unlawful character of the government's action" in this case.

106.    Hill County is not lawfully vested with broad legislative jurisdiction to enact laws or inherent discretionary police powers to promote "the health, safety, morals, or general welfare." Under *Foster*, *Canales*, and other cases limiting the power of county commissioners courts, the "legal basis" for any action must

---

[46] *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124(1978) (citing *Goldblatt* v. *Hempstead*, 369 U.S. 590, 594 (1962)).

be grounded ultimately in the constitution or statutes."[47]   Because county commissioners courts lack both broad legislative jurisdiction and inherent general police power to promote "the health, safety, morals, or general welfare," these general concerns are insufficient sustain the Commissioners Court's adoption of the Data Center Moratorium.

107.   The Data Center Moratorium constitutes a taking because it deprives Plaintiff of economically viable use of its property interests and its legal entitlements to develop the Aquila Site. [48]

108.   Plaintiff seeks just compensation, damages, interest, costs, attorneys' fees under 42 U.S.C. § 1988, declaratory relief, and all other relief available under 42 U.S.C. § 1983 and the Constitution and laws of the United States.

## COUNT IV

### Against All Defendants
### Deprivation of Procedural and Substantive
### Due Process Under 42 U.S.C. § 1983

109.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

---

[47] *Hollins*, 620 S.W.3d at 404 (*Guynes v. Galveston County*, 861 S.W.2d 861, 863 (Tex. 1993) (citation omitted)).

[48] *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992).

110.   This count is asserted under 42 U.S.C. § 1983 against Hill County and against Brassell, Holcomb, and Crumpton in their individual capacities and, to the extent prospective relief is sought, in their official capacities.

111.   Plaintiff possesses federally protected property and liberty interests, including its contractual acquisition rights, deposits, pursuit costs, legal entitlements, ERCOT Batch Zero eligibility, and the right and ability to develop the Aquila Site for use as a data center. The Hill County Commissioners Court lacks  any lawful power under the Texas Constitution or conferred by any Texas statute to impose a moratorium on data center or other industrial development to prevent the commencement of construction of a data center on the Aquila Site.  In so doing, the Hill County Commissioners Court has deprived Plaintiff of the right to pursue lawful industrial development in unincorporated areas of Hill County free from unauthorized county regulation, defeating Plaintiff's reasonable investment-backed expectations for Project Aquila.[49]

112.   Hill County arbitrarily and capriciously deprived Plaintiff of its

---

[49] *RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911 (2nd Cir. 1989) (stating that option to purchase property is sufficient to give option holder an interest that itself could have been considered "property" under the Due Process Clause); *Scott v. Greenville County*, 716 F.2d 1409, 1421 (4th Cir.1983) (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429 (1982) for proposition that an applied for permit is "species of property" where applicant for permit has clear entitlement to permit under state law))

property interests by adopting and enforcing the illegal Data Center Moratorium, which arbitrarily and capriciously deprives Plaintiff of its right — without county approvals— to develop the Aquila Site as a data center.  This violation of substantive due process is an official action and policy for which Hill County is liable for damages under 42 U.S.C. § 1983.[50]

113.   The Data Center Moratorium is void under Texas law. Because the Hill County Commissioners Court has no lawful power to adopt it, it has no lawful power to enforce it or to prevent Plaintiff from commencing construction. The Commissioners Court cannot exercise discretion over how to enforce a moratorium it does not possess the power either to adopt or enforce.

114.   Brassell, Holcomb, and Crumpton admitted as fact that the Hill County Commissioners Court acted without lawful authority when they voted to adopt it.  Brassell and Holcomb openly said so.  Before the Commissioners voted, the Hill County Attorney advised them: "You can revise it however you want.  I don't believe you have the legal authority to enact [a moratorium]."  That they voted to adopt the Data Center Moratorium anyway defines "egregious, conscious shocking conduct" on the part of these elected officials.

---

[50] *See Monell v. Department of Social Services*, 436 U.S. 658, (1978); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988).

115. Defendants acted under color of state law by adopting, maintaining, implementing, threatening to enforce, applying, relying on, or giving effect to the Data Center Moratorium.

116. Defendants deprived Plaintiff of substantive and procedural due process by adopting and maintaining a moratorium that immediately altered Plaintiff's rights, status, and legal relations without lawful authority, without constitutionally adequate standards, without a lawful permitting or review process, without adequate notice of the legal basis for the County's asserted authority, and without a meaningful opportunity for Plaintiff to be heard before its Batch Zero eligibility and project-specific legal entitlements were impaired.

117. Defendants deprived Plaintiff of substantive due process because the Data Center Moratorium is arbitrary, irrational, and not reasonably related to any legitimate governmental interest that Hill County has lawful authority to pursue through a categorical countywide development moratorium.

118. Defendants' conduct shocks the conscience and offends basic principles of ordered liberty. Defendants knowingly adopted an unlawful moratorium after acknowledging correctly that Hill County lacked legal authority to do so.

119.    Hill County is liable under 42 U.S.C. § 1983 because the Hill County Commissioners Court adopted the Data Center Moratorium.  The Commissioners Court for Hill County is final policymaking body for the challenged county action, and the deprivation of Plaintiff's constitutional rights was caused by official county policy, custom, decision, order, and practice.

120.    Brassell, Holcomb, and Crumpton directly participated in the deprivation of Plaintiff's due process rights by maintaining, implementing, enforcing, applying, relying on, or giving effect to it.

121.    Enforcement of the Data Center Moratorium is causing loss or impairment of Batch Zero eligibility, impairment of financing, loss of reasonable investment-backed expectations, lost project value, pursuit costs, deposits, and other consequential injuries.

122.    Plaintiff seeks damages, nominal damages, declaratory relief, preliminary and permanent injunctive relief, attorneys' fees under 42 U.S.C. § 1988, costs, interest, and all other relief available under 42 U.S.C. § 1983 and the Constitution and laws of the United States.

## COUNT V

### Against Hill County
### Regulatory Taking and Inverse Condemnation
### Article I, Section 17 of the Texas Constitution

123.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

124.    Plaintiff sues Hill County for inverse condemnation and regulatory taking under Article I, Section 17 of the Texas Constitution.

125.    Plaintiff holds property rights and interests protected by Article I, Section 17 of the Texas Constitution, including rights and interests in its contractual acquisition rights, deposits, pursuit costs, project-specific development and electrification entitlements, ERCOT Batch Zero eligibility, and reasonable investment-backed expectations for Project Aquila.

126.    Hill County intentionally performed illegal acts in the *ultra vires* exercise of nonexistent governmental powers. The Hill County Commissioners Court possesses no power under the Texas Constitution or any Texas statute  to adopt, maintain, or enforce the Data Center Moratorium.  It has no inherent authority or any police power.

127.    Hill County knew that the Data Center Moratorium would restrain, delay, prohibit, or burden data-center-related construction and development in

unincorporated Hill County, including Project Aquila and the Aquila Site. That was its express purpose.

128.   Hill County's adoption and maintenance of the Data Center Moratorium proximately caused a taking, which prevents Plaintiff from proceeding with the only economically viable intended use of the Aquila Site, impairs Plaintiff's Batch Zero eligibility, destroys or impairs funding for the required Batch Zero capacity deposit, and continues to cause losses to Plaintiff's reasonable investment-backed expectations.

129.   The Data Center Moratorium imposes a severe economic impact on Plaintiff, interferes with distinct and reasonable investment-backed expectations, and constitutes governmental action of a character that supports compensation under Texas regulatory takings law.[51]

130.   Hill County has not instituted condemnation proceedings and has not paid or offered adequate compensation to Plaintiff.

131.   Plaintiff is entitled to recover just compensation, damages, interest, costs, and all other relief available under Article I, Section 17 of the Texas Constitution and Texas inverse condemnation law.

---

[51] *See Sheffield Development Co. v. City of Glenn Heights*, 140 S.W.3d 660 (Tex. 2004); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922 (Tex. 1998).

## COUNT VI

### Against All Defendants
### Violation of Due Course of Law and Arbitrary
### and Capricious Governmental Conduct under
### Article I, Section 19 of the Texas Constitution

132.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

133.   This count is asserted under Article I, Section 19 of the Texas Constitution against Hill County and, for prospective relief, against Brassell, Holcomb, and Crumpton in their official capacities.

134.   Plaintiff has vested and protected rights, privileges, and property interests, including its contractual acquisition rights, deposits, pursuit costs, legal entitlements, ERCOT *Batch Zero* eligibility, ability to proceed with lawful development free from unauthorized county regulation, and reasonable investment-backed expectations for Project Aquila.

135.   Defendants deprived Plaintiff of due course of law by adopting and maintaining the Data Center Moratorium without lawful *authority*, without constitutionally adequate standards, without a lawful local procedure for obtaining relief from the moratorium, and without a meaningful opportunity to be heard before Plaintiff's rights, status, and legal relations were impaired.

136.    Defendants' conduct was arbitrary and capricious because the Data Center Moratorium was adopted despite Defendants' knowledge that Hill County lacked authority to adopt it, was not grounded in any express or necessarily implied county power, singles out data-center-related development for unlawful prohibition or delay, and imposes a discretionary approval barrier that did not previously exist.

137.    Defendants' actions were arbitrary and capricious because the Data Center Moratorium halts commencement of all data center related construction activities without any lawful power or authority to do so. The Commissioners Court has no legislative jurisdiction to make policy.

138.    Texas courts analyze substantive due-course challenges to land-use decisions by examining whether governmental action is arbitrary and irrational.[52]

139.    Plaintiff is entitled to declaratory relief, prospective preliminary and permanent injunctive relief, costs, and all other relief available for violations of Article I, Section 19 of the Texas Constitution.

---

[52] *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922 (Tex. 1998).

## COUNT VII

### Against Hill County
### Impairment of Contract and Retroactive Law under
### Article I, Section 16 of the Texas Constitution

140.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

141.    This count is asserted against Hill County under Article I, Section 16 of the Texas Constitution, which prohibits laws impairing the obligation of contracts and retroactive laws.

142.    Before Hill County adopted the Data Center Moratorium, Plaintiff entered into four contracts with four different landowners between April 2025 and January 2026 granting Plaintiff the right to purchase more than **800** contiguous acres comprising the Aquila Site for more than **$80** million in the aggregate.

143.    Plaintiff entered those contracts and incurred substantial pursuit costs and deposits in reliance on the legal status of the Aquila Site, which is situated in unincorporated area of Hill County.  The Hill County confirmed to Plaintiff that the Aquila Site in Hill County was not under a zoning plan and did not require a building permit.

144.    The Data Center Moratorium substantially impairs Plaintiff's preexisting contractual rights and obligations by prohibiting, suspending,

delaying, or conditioning the data-center-related use that forms the economic premise of the contracts and by preventing Plaintiff from preserving the ERCOT Batch Zero eligibility necessary to make Project Aquila viable.

145. The Data Center Moratorium is a retroactive law because it attaches new legal consequences to Plaintiff's preexisting contracts, expenditures, deposits, project-development activities, ERCOT submissions, ILLE status, and Batch Zero eligibility.

146. The Data Center Moratorium upsets Plaintiff's settled expectations and vested rights by imposing a newly created county and previously nonexistent discretionary approval barrier after Plaintiff had already contracted for the Aquila Site, incurred substantial pursuit costs, obtained project-specific studies, approvals, and entitlements, and had reached the threshold predicates for Batch Zero inclusion.

147. The burdens imposed by the Data Center Moratorium are severe. They impair contracts with an aggregate purchase price exceeding **$80** million, jeopardize more than **$800,000** in deposits and out-of-pocket pursuit costs, chill or destroy financing for a **$61,750,000** Batch Zero deposit, and threaten losses running into the hundreds of millions of dollars.

148.    Article V, Section 18, of the Texas Constitution provides that the Commissioners Court "shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State."   Any public interest asserted to support the Data Center Moratorium is not compelling or sufficient to justify its retroactive impairment of Plaintiff's vested rights and contracts, particularly because Hill County lacked lawful authority to adopt the moratorium in the first place.[53]

149.    Plaintiff is entitled to declaratory relief, preliminary and permanent injunctive relief, costs, and all other relief available for violations of Article I, Section 16 of the Texas Constitution.

### CONDITIONS PRECEDENT

150.    All conditions precedent to Plaintiff's claims for relief have been performed, have occurred, have been satisfied, have been waived, have been excused, or have been made impossible by Defendants' unlawful acts and omissions.

151.    In particular, the Data Center moratorium violates Plaintiff's substantive and procedural due process rights.

---

[53] *See Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126 (Tex. 2010)

(a)     The Data Center Moratorium is void.   The Hill County Commissioners Court possesses no lawful power to adopt this moratorium (or any other such moratorium) under the Texas Constitution or any Texas statute.  Because the moratorium is void, the Hill County Commissioners Court possesses no power to enforce it or to require Plaintiff to seek waivers of its requirements. Moreover, neither the Texas Constitution nor any Texas statute empowers the Commissioners Court to make the findings required to grant waivers or to grant waivers of moratoria, which, in any case, the Commissioners Court does not have the power to adopt in the first instance.

(b)     The Data Center Moratorium's Section 4, Waiver Process does not specify a process; instead, the Commissioners Court arrogates to itself two distinct powers it does not possess: the power to adopt the Data Center Moratorium and the power to grant discretionary waivers of the moratorium under impermissibly vague standards. Section 4 provides no submission requirements, notice timelines for approvals or denials, or standards for approvals or denials. Section 4 fails to reasonably inform Plaintiff which State and Federal laws it must demonstrate it complies with to obtain a waiver, or what procedures and mitigation measures (other than those already in effect).

(c)     The Data Center Moratorium fails to identify any express statutory powers granted to Hill County or its Commissioners Court that necessarily implies that adopting the Data Center Moratorium is indispensable to achieve the express power delegated to the Commissioners Court.[54]

---

[54] *Hollins*, 620 S.W.3d at 404 (citing *Tri-City Fresh Water Supply District No. 2 of Harris County v. Mann*, 142 S.W.2d 945, 947 (Tex. 1940) (stating that "powers which are not expressed and which are merely convenient or useful may not be included and cannot be maintained" and that that when "powers are granted to a municipality by specific provisions, such powers are not enlarged by general language found elsewhere in the act").

(d)    The Data Center Moratorium violates Texas's doctrine of separation of powers by usurping the legislative discretion reserved to the Texas Legislature and not delegated to the Commissioners Court.

(e)    To the extent any Defendant contends that Plaintiff was required to exhaust, pursue, request, or obtain any county discretionary approval, permit, variance, appeal, waiver, reconsideration, administrative decision, or other local governmental action before filing suit, those conditions are unavailable, futile, legally unnecessary, excused, or impossible because Hill County lacked lawful *authority* to adopt the Data Center Moratorium or to require any discretionary approval for Project Aquila.

152.    The Data Center Moratorium is final, definitive, and presently operative as to Plaintiff because it purports to prohibit, suspend, delay, or condition data-center-related construction and development in unincorporated Hill County, including Project Aquila and the Aquila Site, and because it presently prevents Plaintiff from making and supporting ERCOT-related discretionary-approval attestations necessary to preserve Project Aquila's Batch Zero eligibility.

### APPLICATION FOR PRELIMINARY INJUNCTION
### BARRING ENFORCEMENT OF THE DATA CENTER MORATORIUM

153.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

154.    Plaintiff seeks a preliminary injunction under Federal Rule of Civil Procedure 65, 28 U.S.C. § 2202, and the Court's equitable powers barring Hill County, Brassell, Holcomb, Crumpton, and all officers, agents, servants,

employees, attorneys, and persons in active concert or participation with them from enforcing, implementing, applying, relying on, or giving effect to the Data Center Moratorium pending final judgment.

155. Plaintiff is substantially likely to succeed on the merits. Hill County lacked constitutional or statutory authority to adopt the Data Center Moratorium; the moratorium is *ultra vires*, void, and unenforceable; the moratorium effects a regulatory taking and inverse condemnation; the moratorium deprives Plaintiff of due process and due course of law; and the moratorium impairs Plaintiff's preexisting contracts and operates retroactively in violation of the Texas Constitution.

156. Plaintiff faces a substantial threat of irreparable injury if preliminary relief is not granted. The Data Center Moratorium prevents Plaintiff from making and supporting ERCOT discretionary-approval attestations, threatens Project Aquila's Batch Zero eligibility, impairs or destroys financing for the $61,750,000 Batch Zero capacity deposit, delays Project Aquila into a later electrification batch, destroys unique development opportunities, clouds property and contract rights, and causes injuries that cannot be fully measured or remedied by money damages after final judgment.

157. The threatened injury to Plaintiff outweighs any alleged injury to Defendants. Defendants have no legitimate interest in enforcing an unlawful moratorium adopted without legal authority. By contrast, Plaintiff faces loss of Batch Zero eligibility, collapse of project financing, destruction or severe impairment of Project Aquila, and losses running into the hundreds of millions of dollars.

158. A preliminary injunction will not disserve the public interest. The public interest is served by requiring government officials to comply with the Texas Constitution, the United States Constitution, statutory limits on county power, and the rule of law. The public has no legitimate interest in enforcement of an *ultra vires* and unconstitutional moratorium.

159. The balance of equities favors preliminary relief. Defendants adopted the Data Center Moratorium despite knowing that Hill County lacked authority to do so. Plaintiff, by contrast, spent more than 16 months and substantial sums pursuing a lawful project in reliance on Hill County's written confirmation that no zoning plan, building permit, or certificate of occupancy requirement applied.

160. Plaintiff has no adequate remedy at law because the loss of ERCOT Batch Zero eligibility, collapse of project-specific financing, impairment of

unique real-property acquisition rights, inability to satisfy time-sensitive ERCOT requirements, and deprivation of constitutional rights cannot be fully cured by a later award of damages.

161.   The federal standard for preliminary injunctive relief is satisfied because Plaintiff is likely to succeed on the merits, is likely to suffer irreparable harm absent preliminary relief, the balance of equities favors Plaintiff, and an injunction is in the public interest. [55]

162.   Plaintiff has shown a probable right to relief and probable, imminent, and irreparable injury absent an injunction.

163.   Plaintiff requests that the Court issue a preliminary injunction ordering that, pending final judgment, Defendants and all persons acting in concert with them are enjoined from:

(a)   enforcing, implementing, applying, relying on, or giving effect to the Data Center Moratorium;

(b)   treating the Data Center Moratorium as a discretionary approval requirement, permitting requirement, development prohibition, pre-construction restraint, moratorium, or impediment to Project Aquila;

(c)   communicating to ERCOT, Lone Star Transmission, LLC, Brazos Electric Power Cooperative, Inc., Hilco Electric Cooperative, Inc., any Interconnecting DSP, any Interconnecting TSP, any investor, any lender, or any other person that the Data Center Moratorium is valid, enforceable,

---

[55] *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008).

applicable to Project Aquila, or capable of preventing or delaying Project Aquila;

(d)    refusing, because of the Data Center Moratorium, to confirm that Hill County has no zoning plan, building-permit requirement, certificate-of-occupancy requirement, or other discretionary approval requirement applicable to Project Aquila; and

(e)    taking any action based on the Data Center Moratorium, which would impair Plaintiff's ability to make, support, transmit, or rely on ERCOT-related discretionary-approval attestations.

164.    Plaintiff is willing to post security in an amount the Court determines proper under Federal Rule of Civil Procedure 65(c). Because the Data Center Moratorium is *ultra vires*, void, illegal, and unenforceable, Defendants will suffer no cognizable injury from being restrained from enforcing an unlawful, void and *ultra vires* moratorium, Plaintiff requests that the Court set a nominal bond.

## APPLICATION FOR PERMANENT INJUNCTION

165.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

166.    Plaintiff seeks a permanent injunction after final hearing and judgment barring Hill County, Brassell, Holcomb, Crumpton, and all officers, agents, servants, employees, attorneys, and persons in active concert or participation with them from enforcing, implementing, applying, relying on, or giving effect to the Data Center Moratorium.

167.    Plaintiff is entitled to permanent injunctive relief because Plaintiff will prevail on the merits; Plaintiff will suffer irreparable injury absent permanent relief; legal remedies are inadequate; the balance of hardships favors Plaintiff; and the public interest favors an injunction prohibiting enforcement of an unlawful and unconstitutional moratorium.

168.    A permanent injunction is necessary to prevent Defendants from continuing to impair Plaintiff's property rights, contractual rights, legal entitlements, ERCOT Batch Zero eligibility, project financing, reasonable investment-backed expectations, and constitutional rights.

169.    Plaintiff requests a permanent injunction ordering that Defendants and all persons acting in concert with them are permanently enjoined from:

(a)    enforcing, implementing, applying, relying on, or giving effect to the Data Center Moratorium;

(b)    treating the Data Center Moratorium as valid, enforceable, or applicable to Plaintiff, Project Aquila, or the Aquila Site;

(c)    treating the Data Center Moratorium as a discretionary approval requirement, permitting requirement, development prohibition, pre-construction restraint, moratorium, or impediment to Project Aquila;

(d)    communicating to ERCOT, Lone Star Transmission, LLC, Brazos Electric Power Cooperative, Inc., Hilco Electric Cooperative, Inc., any Interconnecting DSP, any Interconnecting TSP, any investor, any lender, or any other person that the Data Center Moratorium is valid, enforceable,

applicable to Project Aquila, or capable of preventing or delaying Project Aquila; and

(e)     taking any action based on the Data Center Moratorium, which would impair Plaintiff's ability to make, support, transmit, or rely on ERCOT-related discretionary-approval attestations.

## PRAYER FOR RELIEF

For these reasons, Plaintiff, RCM Hill, LLC, respectfully requests that Defendants Hill County, Shane Brassell, Jim Holcomb, and Larry Crumpton be cited to appear and answer, and that after notice, hearing, trial, and final judgment, the Court grant Plaintiff the following relief:

1.     A declaratory judgment under 28 U.S.C. §§ 2201 and 2202 declaring that the Data Center Moratorium exceeds Hill County's lawful authority, is *ultra vires*, void *ab initio*, unenforceable, and of no force or effect.

2.     A declaratory judgment under Texas Civil Practice and Remedies Code Chapter 37 declaring that the Data Center Moratorium exceeds Hill County's lawful authority, is *ultra vires*, void *ab initio*, unenforceable, and of no force or effect.

3.     A declaratory judgment that Hill County is a Texas county and political subdivision unlawfully exercised inherent general police powers that are not conferred on Hill County by the Texas Constitution or Texas statute, either expressly or by necessary implication.

4.     A declaratory judgment that no provision of the Texas Constitution or Texas statutes authorizes Hill County, the Hill County Commissioners Court, or any Hill County official to adopt, maintain, implement, enforce, or give effect to a categorical moratorium on data-center-related construction or development in unincorporated areas of Hill County.

5. A declaratory judgment that the votes cast by Brassell, Holcomb, and Crumpton in favor of the Data Center Moratorium were *ultra vires* and legally ineffective to create any valid county law, order, regulation, moratorium, permitting requirement, discretionary approval requirement, development prohibition, or pre-construction condition.

6. A declaratory judgment that Hill County, Brassell, Holcomb, Crumpton, and all persons acting in concert with them may not enforce, apply, implement, rely on, or give effect to the Data Center Moratorium.

7. A declaratory judgment that the Data Center Moratorium may not be treated as a required discretionary approval, pending discretionary approval, permitting condition, construction prohibition, development prohibition, moratorium, or governmental impediment to Project Aquila or to Plaintiff's ability to make, support, transmit, or rely on ERCOT-related discretionary-approval attestations.

8. A preliminary injunction, pending final judgment, enjoining Defendants and all officers, agents, servants, employees, attorneys, and persons in active concert or participation with them from enforcing, implementing, applying, relying on, or giving effect to the Data Center Moratorium.

9. A permanent injunction, after final judgment, enjoining Defendants and all officers, agents, servants, employees, attorneys, and persons in active concert or participation with them from enforcing, implementing, applying, relying on, or giving effect to the Data Center Moratorium.

10. A judgment that Hill County is liable to Plaintiff under 42 U.S.C. § 1983 for taking Plaintiff's property for public use without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

11. A judgment that Hill County is liable to Plaintiff for inverse action and regulatory taking under Article I, Section 17 of the Texas Constitution.

12. A judgment that Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for depriving Plaintiff of procedural and substantive due process in violation of the Fourteenth Amendment to the United States Constitution.

13. A judgment that Defendants violated Plaintiff's due-course-of-law rights under Article I, Section 19 of the Texas Constitution and engaged in arbitrary and capricious governmental conduct.

14. A judgment that Hill County violated Article I, Section 16 of the Texas Constitution by impairing Plaintiff's preexisting contracts and by adopting and applying a retroactive law.

15. Just compensation for the taking, damaging, destruction, or application to public use of Plaintiff's property interests in an amount to be determined by the trier of fact.

16. Actual damages, consequential damages, and all other compensatory damages recoverable under 42 U.S.C. § 1983, Texas inverse-condemnation law, and any other applicable law.

17. Nominal damages for violations of Plaintiff's constitutional rights if the trier of fact determines that Plaintiff is not entitled to actual damages on any constitutional claim.

18. Prejudgment and post-judgment interest at the maximum lawful rate.

19. Reasonable and necessary attorneys' fees under 42 U.S.C. § 1988, Texas Civil Practice and Remedies Code Chapter 37, and any other applicable law.

20. Taxable and non-taxable costs of court.

21. All writs and process necessary to enforce the Court's orders, injunctions, declarations, and judgment.

22. Such other and further relief, at law or in equity, general or special, legal or equitable, to which Plaintiff may show itself entitled.

Respectfully submitted,

/s/ *Thomas M. Whelan* [2026-05-27]

**THOMAS M. WHELAN**
Texas Bar Number 21263800
**THALHEIMER, CIPIONE, WHELAN**
**& MORGAN, PLLC**

8350 N. Central Expressway
Suite 1420
Dallas, Texas  75206

D: (214) 954-6815
twhelan@tcwmlaw.com

*Pending Admission*
*to United States District Court*
*for the Western District of Texas*

**BEARD KULTGEN BROPHY BOSTWICK**
**& DICKSON, PLLC**

Angus E. McSwain
State Bar No. 13861100
Frederick deB. Bostwick, III
State Bar No. 02682500220
South Fourth Street
Waco, Texas 76701
Tel: (254) 776-5500
Fax: (254) 776-3591
mcswain@thetexasfirm.com
bostwick@thetexasfirm.com

**ATTORNEYS FOR PLAINTIFF,**
**RCM HILL, LLC**

---

PLAINTIFF'S ORIGINAL COMPLAINT